IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR CHARLOTTE COUNTY, FLORIDA

Heritage Property & Casualty Insurance Company as subrogee of Elizabeth Keller,

Plaintiff,

v. Case No. 25001769CA

The Procter & Gamble Company and Walmart Inc.,

Defendants.
_______________________________/

**COMPLAINT**

Plaintiff, Heritage Property & Casualty Insurance Company ("Heritage"), appears through counsel as subrogee of Elizabeth Keller ("Insured") and sues The Procter & Gamble Company and Walmart Inc., stating:

**JURISDICTION, PARTIES, AND VENUE**

1. This is an action for damages greater than fifty thousand dollars ($50,000.00) exclusive of interest, costs, and attorney's fees.

2. Plaintiff, Heritage Property & Casualty Insurance Company, is a corporation properly registered with the Florida Department of Insurance to transact business as an insurance carrier in the State of Florida.

3. Defendant, The Procter & Gamble Company (hereinafter "P&G"), is an Ohio defendant not registered to transact business in the State of Florida. It is engaged in the business of designing, manufacturing, assembling, producing, importing, testing, inspecting, marketing, advertising, supplying, and distributing home products including flying insect traps.

4. Defendant, Walmart Inc. (hereinafter "Walmart"), is a Delaware defendant registered to transact business in the State of Florida. It is engaged in the business of marketing, advertising, supplying, and distributing home products including flying insect traps.



FILED: 12/17/2025 04:37 PM: Roger D. Eaton, Clerk of the Circuit Court, Charlotte County, FL DIN3

5. This Court is authorized to exercise personal jurisdiction over each foreign defendant pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the causes of action stated herein arise out of each foreign defendant:

a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;
b. Committing a tortious act within Florida; or
c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) the Defendant was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by the Defendant anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

6. This Court is authorized to exercise personal jurisdiction over each foreign defendant pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because each defendant is engaged in substantial and not isolated activity within Florida.

7. This Court is authorized to exercise personal jurisdiction over each foreign defendant because each defendant enjoys such numerous, continuous, significant, and systematic contacts with Florida that each defendant may fairly be regarded as at home in Florida.

8. Venue is proper in this Court because the acts and/or omissions which form the basis of this lawsuit occurred in Charlotte County, Florida.

## GENERAL ALLEGATIONS

9. At all times relevant to this action, the Insured owned the real property at 59 Oakland Hills Pl., Rotonda West, FL 33947 ("Insured Property").

10. At all times relevant to this action, the Insured Property was insured by Heritage Policy No. HOH 672928 ("Policy"). A copy of the Policy declaration is attached as **Exhibit A** and a full copy of the Policy is available upon request.

11. At all times relevant to this action, the Insured owned a ZEVO, model number 364, plug-in flying insect trap.

12. The insect trap, and each of its component parts was designed, manufactured, assembled, produced, supplied, tested, inspected, imported and/or distributed by, or under the direction and control of The Procter & Gamble Company.

13. The insect trap was imported to the United States by The Procter & Gamble Company.

14. Following importation, the insect trap was distributed, supplied, sold, or otherwise transferred by The Procter & Gamble Company and Walmart Inc..

15. The Procter & Gamble Company and Walmart Inc. placed the insect trap into the stream of commerce and sold the insect trap to the Insured.

16. On or about 8/4/2024 the insect trap failed and, as a direct and proximate result, the Insured Property suffered damage.

17. The defect in the product that caused the loss was unreasonably dangerous and existed both at the time of the loss and at the time the product was within the possession of the manufacturer.

18. Heritage determined the damage was a covered loss under the Policy and indemnified the Insured as required by the Policy.

19. Heritage made payments to its Insured pursuant to the Policy.

20. Heritage did not act as a volunteer in making the payments and Heritage was not primarily liable for the debt. Heritage made the payments in order to protect its own interest.

21. Pursuant to Florida law, Heritage is subrogated to the rights of its Insured to the full extent of its payments and its Insured's deductible.

22. Heritage has fully indemnified its insured by virtue of payments totaling $135,588.05.

23. Heritage is entitled to recover $135,588.05, any supplemental payments, interest, and costs of this action.

24. Permitting Heritage to seek recovery for its payments works no injustice to the right of any third-party.

25. All conditions precedent to bringing this action have been satisfied or waived.

## COUNT I – STRICT LIABILITY – P&G

26. The allegations in paragraphs 1-25 are realleged herein.

27. P&G designed, manufactured, assembled, produced, supplied, tested, and inspected the insect trap and otherwise placed the product into the stream of commerce.

28. The insect trap, including but not limited to its lack of circuitry safety features, is defective in its design in that it allows foreign objects to interact with its circuitry.

29. The defects in the insect trap actually and proximately caused the injury and damage to the Insured Property.

30. Heritage paid to repair and remediate the damage and is entitled to recover to the extent of its payments under the Policy, including but not limited to, all payments for remediation, mitigation, dwelling repair, personal property, and loss of use.

WHEREFORE the Plaintiff, Heritage Property & Casualty Insurance Company, respectfully requests this Court enter judgment in its favor, and against The Procter & Gamble Company, for the full damage incurred, including all payments for remediation, mitigation, dwelling repair, personal property, loss of use, interest, and costs of this action.

**COUNT II – NEGLIGENCE – P&G**

31. The allegations of paragraphs 1-25 are realleged herein.

32. P&G designed, manufactured, assembled, produced, supplied, tested, and inspected the insect trap and otherwise placed it into the stream of commerce.

33. P&G designed, manufactured, assembled, produced, supplied, tested, and inspected the lack of circuitry safety features in the insect trap and otherwise placed it into the stream of commerce.

34. P&G owed a duty of care to the Insured to not place the insect trap into the stream of commerce while in a defective condition.

35. P&G owed a duty of care to the Insured to adequately test, inspect, and ensure the quality of the insect trap before placing it into the stream of commerce.

36. P&G owed a duty of care to the Insured to adequately test, inspect, and ensure the quality of the lack of circuitry safety features in the insect trap before placing it into the stream of commerce.

37. P&G owed a duty of care to the Insured to remedy the defective condition(s) of the insect trap or to adequately warn or protect the Insured from the defective condition(s) after it left defendant's final possession, custody, and control.

38. P&G owed a duty of care to the Insured to remedy the defective condition(s) of the lack of circuitry safety features in the insect trap or to warn or protect the Insured from the defective condition of the lack of circuitry safety features after the insect trap left defendant's final possession, custody, or control.

39. P&G owed a duty of care to the Insured to not place the insect trap into the stream of commerce while in a defective condition.

40. P&G breached the above duties of care.

41. P&G's breaches of the above duties of care actually and proximately caused injury and damage to the Insured Property.

WHEREFORE the Plaintiff, Heritage Property & Casualty Insurance Company, respectfully requests this Court enter judgment in its favor, and against The Procter & Gamble Company, for the full damage incurred, including all payments for remediation, mitigation, dwelling repair, personal property, loss of use, the insured's deductible, interest, and costs of this action.

## COUNT III – STRICT LIABILITY (WALMART)

42. The allegations of paragraphs 1-25 are realleged herein.

43. Walmart is in the business of importing, marketing, and selling insect traps and associated merchandise to consumers.

44. Walmart specifically sold the insect trap, including but not limited to its lack of circuitry safety features, that is the subject of this lawsuit.

45. At the time of sale, the insect trap was in a defective condition unreasonably dangerous to the user or consumer or to his property.

46. The insect trap was expected to, and did, reach the end user or consumer without substantial change in the condition in which it was sold.

47. As a direct and proximate result of the defective and unreasonably dangerous condition of the insect trap, the product failed and the Insured Property, and personal property thereon, suffered damage.

48. Heritage paid to repair and remediate the damage and is entitled to recover to the extent of its payments under the Policy, including but not limited to, all payments for remediation, mitigation, dwelling repair, personal property, and loss of use.

WHEREFORE the Plaintiff, Heritage Property & Casualty Insurance Company, respectfully requests this Court enter judgment in its favor, and against Walmart Inc., for the full damage incurred, including all payments for remediation, mitigation, dwelling repair, personal property, loss of use, interest, and costs of this action.

**DESIGNATION OF SERVICE EMAIL**

In accordance with Fla. R. Jud. Admin. 2.516(b)(1)(A) the undersigned designates the following e-mail addresses for service:

Primary: Service@BLFFL.com
Secondary: TBrown@BLFFL.com

Respectfully submitted on December 17, 2025.

BROWN LAW FIRM, PL
1540 Int'l Pkwy., Ste. 2000
Lake Mary, FL 32746
Phone: (407) 347-4908
Service: Service@BLFFL.com

/s/ Tyler Brown
Fla. Bar No. 90932
TBrown@BLFFL.com

**Heritage Property & Casualty Insurance Company**
**Homeowners Declarations Page**

Heritage Property & Casualty
Insurance Company
1401 N Westshore Blvd
Tampa, FL 33607
1-855-536-2744

HERITAGE Insurance

**Agent Name:** Arnold Insurance Alliance, LLC
**Address:** 1357 S McCall Road
Suite 1
Port Charlotte, FL 33961
**Agent Phone #:** (941)214-8668

If you have any questions regarding this policy which your agent is unable to answer, please contact us at 1-855-536-2744.

**Agency Code:** H4940

**Policy Number:** HOH672928
**Named Insured:** ELIZABETH KELLER
**Mailing Address:** 59 Oakland Hills Pl
Rotonda West, FL 33947

Insuring Company: Heritage Property & Casualty Insurance Company
1401 N Westshore Blvd
Tampa, FL 33607

**Phone Number:**

**Effective Dates:** From: 03/02/2024 12:01 am To: 03/02/2025 12:01 am Effective date of this transaction: 03/02/2024 12:01 am

**Activity:** Renewal **Co-Applicant:**

**Insured Location:** 59 Oakland Hills Pl
Rotonda West, FL 33947
Charlotte County

**Coverages and Premiums:**

*Coverage at the residence premises is provided only where a limit of liability is shown or a premium is stated.*

| **Coverage Section** | |
|---|---|
| Coverage - A - Dwelling | [redacted] |
| Coverage - B - Other Structures | |
| Coverage - C - Personal Property | |
| Coverage - D - Loss Of Use | |
| Coverage - E - Personal Liability | |
| Coverage - F - Medical Payments To Others | |

Total of Premium Adjustments [redacted]

**SEE PAGE 3 FOR DETAILED DESCRIPTION OF PREMIUM ADJUSTMENTS**

**Total Policy Premium**

**Hurricane Premium = $2,810.00 Non-Hurricane Premium = $604.00**

**Deductible:** **All Other Perils: $1,000** **Hurricane Deductible: 2% of Coverage A = $5,013**

**Law and Ordinance:** **Law and Ordinance :** 10% of Coverage A = [redacted]

If your policy contains replacement cost on dwelling, the amount of coverage will not exceed the stated policy value.

[signature] 01/01/2024

Ernie Garateix
Authorized Signature

EXHIBIT
A
Brown Law Firm, PL

**Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony in the third degree.**

| | | | |
|---|---|---|---|
| **Forms and Endorsements:** | HPC NCPT V58 02 14 | HPC NCPT V66 02 14 | OIR B1 1670 01 06 |
| | OIR B1 1655 02 10 | HPC HOJ 02 14 | HPCHO3 IDX 07 12 |
| | HPC PRI 02 14 | HO 00 03 04 91 | HO 03 51 05 13 |
| | HPCHO3 09 SP 07 23 | HPCHO 09 OTL 07 23 | HPCHO 09 DN 07 12 |
| | HPCHO REJ OLR 03 13 | HPCHP 06 CLP 07 12 | HPC HDR 01 13 |
| | HPCHO3 PPS 07 19 | HPC CGCC 07 12 | HPC IDF 03 18 |
| | HPCHO 09 ED 07 12 | HPCHO 09 ELE 12 13 | HO 04 96 04 91 |
| | HPCHO 23 70 07 23 | HPCHO 09 FCE 09 21 | HO 04 21 10 94 |
| | HPC OLN 03 13 | HPC OSLC 07 12 | HPCHO 09 OL3 12 12 |
| | HPCHO 09 WD 12 13 | HPC CE 07 12 | HPC WE 07 12 |
| | INCR 01 22 | HPC MUP 10 22 | HPC PSE 02 22 |

| | | | | |
|---|---|---|---|---|
| **Pay Plan:** | **Number of Payments:** 4 | | **Bill to:** | INSURED |
| **Rating Information:** | **Program:** HO-3<br>**Territory:** 132F10 | | **Construction Type:**<br>**Year Constructed:** | Masonry<br>1974 |
| **Scheduled Property:** | **Description:** | | | |

**Messages:**

**In the event of a claim, please call toll free 1-855-415-7120.**

**We are available 24 hours a day, 7 days a week.**

This replaces all previously issued policy declarations, if any. In case of property loss, only that part of loss over stated deductibles applies, unless otherwise stated in the policy. This declaration page together with all policy provisions and any other applicable endorsements completes your policy.

A rate adjustment of 0% is included to reflect the Building Code Enforcement Grade in your area. Adjustments range from 5% surcharge to 46% credit.

A rate adjustment of 20% credit is included to reflect the Windstorm Mitigation Device Credit. This credit applies only to the wind portion of your premium. Adjustments range from 0% to 90%.

Your Property Coverage limit increased at renewal due to an inflation factor of 8.5%, as determined by a national index of construction costs, to maintain insurance to the approximate replacement cost of your home. The coverage shown may reflect a different factor if you have requested an adjustment.

| Coverage Section | Limits | Non-Hurricane | Hurricane | Total |
|---|---|---|---|---|
| Coverage C Increased Special Limits Of Liability -Jewelry, Watches and Furs | [redacted] | | | |
| Coverage C Increased Special Limits Of Liability -Silverware, Goldware and Pewterware | | | | |
| Identity Fraud Expense Coverage | | | | |
| Limited Fungi, Wet Or Dry Rot, Or Bacteria Coverage | | | | |
| Loss Assessment Coverage | | | | |
| Ordinance Or Law Offer Of Coverage | | | | |
| Water Damage Exclusion | | | | |
| Construction Type | | | | |
| Age of Roof | | | | |
| Deductible | | | | |
| Age of Home | | | | |
| Protection Class Factor | | | | |
| Paperless Policy Discount | | | | |
| Financial Responsibility Credit | | | | |
| Windstorm Loss Mitigation Credit | | | | |
| Policy Fee | | | | |
| Emergency Management Preparedness and Assistance Trust Fund Fee | | | | |
| FIGA Assessment 4.10.2023 (1.0%) | | | | |

**Policy Interest:**

| NAME | ADDRESS | INTEREST TYPE | BILL TO | REFERENCE# |
|---|---|---|---|---|

Special Message:

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**<u>LAW AND ORDINANCE:</u> LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.**

**FLOOD COVERAGE IS NOT PROVIDED BY THIS POLICY.**

**<u>FLOOD INSURANCE:</u> YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.**

The amount of premium change due to an approved rate increase is $237.00.
The amount of premium change due to a coverage change is $94.00.